THABLE ROBERTS TALENT v. COY EUGENE TALENT

COY EUGENE TALENT v. THABLE ROBERTS TALENT

No. 845DC1295

(Filed 17 September 1985)

1. **Divorce and Alimony § 16.8— wife not dependent spouse—insufficient findings**
    The trial court's findings were insufficient to support its determination that the wife was not a dependent spouse where the court made no findings as to the standard of living to which the parties became accustomed during the marriage, the total value of the estate of each spouse, the length of the marriage, and the contribution of each party to the financial status of the marital unit over the years; the findings made regarding the estates, expenses and current incomes of the parties were inadequate; the court should have made a finding as to whether the wife's prospective earning capacity is uncertain because of health problems; and the limited findings made tend to indicate that the wife is a dependent spouse and the husband is the supporting spouse.

2. **Divorce and Alimony § 30— equitable distribution—valuation of marital property—action pending on 1 August 1983—date of separation**
    The 1983 amendments to G.S. 50-20(b)(1) and G.S. 50-21(b) require that the date of the parties' separation rather than the date the divorce action was filed be used in identifying and valuing marital property where the action between the parties for absolute divorce and equitable distribution was pending in the district court on 1 August 1983.

3. **Divorce and Alimony § 30— equitable distribution—amount in joint accounts—portion spent by wife—marital property**
    Where $68,000 in savings accounts and certificates of deposit was acquired by the parties during the marriage and was owned by them on the date of their separation, the trial court correctly determined that the full $68,000 was marital property even though the wife withdrew such amount and had possession of only a portion thereof at the time of the hearing. G.S. 50-20(b)(1).

4. **Divorce and Alimony § 30— equitable distribution—indebtedness of wife—repaid loan**
    The trial court in an equitable distribution proceeding properly found that the wife had no indebtedness where the evidence showed that a loan which she had been repaying was completely repaid prior to the time of the equitable distribution hearing. G.S. 50-20(c)(1).

5. **Divorce and Alimony § 30— equitable distribution—business as separate property—value**
    The evidence in an equitable distribution proceeding supported the trial court's findings that the husband purchased a business prior to the marriage, that it was his separate property, and that it has a current net worth of $7,000.

---

---

6. **Divorce and Alimony § 30— equitable distribution—admission that jewelry was separate property**

 The trial court erred in treating certain jewelry given to the wife by the husband during the marriage as marital property where the husband admitted at the equitable distribution hearing that the jewelry was the wife's separate property.

7. **Divorce and Alimony § 30— equitable distribution—equity in mobile home—repayment of loan from marital funds—marital property**

 The equity in a mobile home and lot purchased by the husband after the parties separated with money from repayment from a loan originally made from marital funds constituted marital property.

8. **Divorce and Alimony § 30— equitable distribution—consideration of separate property—necessity for finding**

 In determining an equitable division of marital property, the trial court should have made a finding indicating its consideration of separate realty and cemetary lots acquired by the wife prior to the marriage and owned by her at the time the property division was to become effective. G.S. 50-20(c)(1).

9. **Divorce and Alimony § 30— equitable distribution—net value of property**

 The division of marital property is to be accomplished by using the net value of the property, *i.e.*, its market value, if any, less the amount of any encumbrance serving to offset or reduce market value. G.S. 50-20(c).

10. **Divorce and Alimony § 30— equitable distribution—determination before alimony**

 When both permanent alimony and equitable distribution are requested, the equitable distribution should be decided first since the court, in determining whether a party is entitled to alimony, must consider the estates of both parties, and the estates cannot definitely be determined until it is decided how the marital property is to be distributed.

APPEAL by Thable Roberts Talent from *Rice, Judge.* Judgments entered 7 May 1984 and 18 May 1984 in NEW HANOVER County District Court. Heard in the Court of Appeals 12 August 1985.

 Appellant Thable Roberts Talent and appellee Coy Eugene Talent were married on 28 November 1974 and separated on 26 September 1980. In September 1980, appellant wife instituted civil action No. 80CVD2312 seeking a divorce from bed and board, *pendente lite* and permanent alimony, counsel fees, and other relief. Subsequently, appellant's request for alimony *pendente lite* and counsel fees was denied. In October 1981, appellee husband instituted civil action No. 81CVD2401 seeking an absolute divorce based on one year's separation and an equitable distribution of

the marital property. Judgment of absolute divorce was entered on 23 November 1981.

Approximately one year later, a hearing was held on the distribution of the marital property. In May 1983, a jury trial was held to determine whether appellant had grounds for alimony under N.C. Gen. Stat. 50-16.2 (1984). The jury returned a verdict in favor of appellant finding that appellee had both committed adultery and, without provocation, offered such indignities to appellant as to render her condition intolerable and life burdensome. Shortly thereafter, a hearing was held to determine whether appellant was a dependent spouse, thus qualifying for an award of alimony.

The trial court concluded that appellant was not a dependent spouse and appellee was not a supporting spouse and denied appellant's request for permanent alimony by judgment entered in civil action No. 80CVD2312 on 7 May 1984. That same day, a judgment was entered in civil action No. 81CVD2401 distributing the parties' marital property. On 18 May 1984, a further judgment was entered in the latter action ordering the transfer of title of certain marital property. Appellant wife appealed from the judgments entered.

*Goldberg & Anderson, by Frederick D. Anderson, and Mary E. Lee for appellant.*

*No brief for appellee.*

WELLS, Judge.

## I.  *Alimony*

Appellant argues that the judgment denying her request for permanent alimony must be reversed because the trial court failed to make adequate findings of fact to support it. To be entitled to alimony, a spouse must not only have one of the grounds set forth in N.C. Gen. Stat. 50-16.2 (1984), he or she must also be a "dependent spouse." N.C. Gen. Stat. 50-16.1(3) (1984) defines a "dependent spouse" as "a spouse, whether husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse." Conversely, a "supporting spouse" is "a spouse, whether husband or wife, upon

whom the other spouse is actually substantially dependent or from whom such other spouse is substantially in need of maintenance and support." N.C. Gen. Stat. 50-16.1(4) (1984).

For a spouse to be "actually substantially dependent" upon the other spouse, he or she must have actual dependence on the other in order to maintain the standard of living to which he or she became accustomed during the last several years prior to the spouses' separation. *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980). To determine whether such actual dependence exists, the trial court must evaluate the parties' incomes and expenses measured by the standard of living of the family as a unit. *Id.*

If the court determines that one spouse is not actually dependent on the other for such support, the court must then determine if one spouse is "substantially in need of maintenance and support" from the other, *i.e.*, whether one spouse would be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other. *Id.* In doing so, the court must determine and consider the following: (1) the standard of living, socially and economically, to which the parties as a family unit became accustomed during the several years prior to their separation; (2) the present earnings, prospective earning capacity, and any other condition, such as health, of each spouse at the time of the hearing; (3) whether the spouse seeking alimony has a demonstrated need for financial contribution from the other spouse in order to maintain the parties' accustomed standard of living, taking into consideration the spouse's reasonable expenses in light of that standard of living; and (4) the financial worth or "estate" of both spouses. *Id.* The court must also consider fault and other facts of the particular case such as the length of the marriage and the contribution made by each spouse to the financial status of the family over the years. *Id.*

The conclusions made by the court as to whether a spouse is "dependent" or "supporting" must be based on findings of fact sufficiently specific to indicate that the court properly considered the factors set out in *Williams. See Quick v. Quick*, 305 N.C. 446, 290 S.E. 2d 653 (1982); *Roberts v. Roberts*, 68 N.C. App. 163, 314 S.E. 2d 781 (1984). In the absence of such findings, appellate courts cannot appropriately determine whether the order of the

trial court is adequately supported by competent evidence, and therefore such an order must be vacated and the case remanded for necessary findings. *Quick, supra.* It is not enough that there is evidence in the record from which such findings could have been made because it is for the trial court, and not this court, to determine what facts are established by the evidence. *See Quick* and *Roberts, supra.*

[1] The findings contained in the judgment now before us are deficient in several respects. First, the trial court made no findings of fact as to the following factors required to be considered: (1) the standard of living to which the parties became accustomed during the marriage prior to their separation, (2) the total value of the estate of either spouse, (3) the length of the marriage, and (4) the contribution of each party to the financial status of the marital unit over the years.

Second, the findings made concerning the parties' estates are inadequate. The court did not place a value on any of the property owned by the parties, except for certain jewelry given to appellant wife, and failed to establish all of the property owned by appellant. Specifically, the court failed to find that appellant owns 1.4 acres of land in Murraysville and some cemetary lots as is shown by the evidence. In addition, the court found that appellant withdrew $68,000 from a joint account of the parties in September 1980 but failed to make a finding with respect to the amount of money remaining in appellant's possession at the time of the dependency hearing. The evidence tended to show that appellant had spent all but approximately $18,500 of the $68,000 by the time of the dependency hearing and that the money had been spent on attorney's fees, traveling, and maintaining the standard of living to which she had become accustomed prior to the parties' separation.

The findings made regarding the expenses of the parties are similarly inadequate. The court found that appellant wife incurred monthly expenses for newspapers and magazines, medicine and medical care, eyeglasses, dental care, hair appointments, food, utilities, automobile maintenance and insurance, and yard work which totaled approximately $553. The evidence clearly shows, however, that the reasonable monthly expenses incurred by appellant to maintain the standard of living to which she had

become accustomed prior to the parties' separation was much greater than $553 and included expenses for items not mentioned by the court such as clothing, insurance, and birthday and Christmas presents. The finding as to the appellee husband's monthly expenses contains very little information and is for that reason inadequate. Furthermore, the court's finding that appellee's monthly expenses are "minimal" does not appear to be supported by the evidence. Appellee's testimony shows that he spends over $500 a month for food alone and that he has other substantial monthly expenses as well.

The findings are also questionable or deficient in other respects. The court found that appellant's health "is good, except she has some nervous problem and needs an operation on her hand at some time in the future. . . ." The evidence tends to show, however, that appellant has pain in both wrists, that she had surgery on her right wrist prior to the parties' separation to relieve the pain, that it has been recommended that she have surgery on her left wrist to relieve her pain and that she has very bad varicose veins. The evidence further tends to show that appellant's job requires that she stand on her feet most of the day and that she continually use and bend her wrists, that appellant works in constant pain, that she has no possibility of a promotion to a sedentary type job with her present employer, and that she has no training for any other type of work. This evidence does not support the finding that appellant's health is good with no further qualification other than that stated by the court. Moreover, this evidence requires a finding as to whether appellant's prospective earning capacity is uncertain.

The court further failed to make sufficient findings regarding the parties' current incomes. Detailed evidence was presented at the dependency hearing on this subject; however, this evidence is not reflected in the findings made. Rather, the findings made with respect to the parties' incomes reflect evidence presented at a hearing in July 1981 and thus show only the parties' past incomes.

Lastly, the limited findings made tend to indicate that appellant wife is, in fact, a dependent spouse and that appellee husband is the supporting spouse. Thus, we conclude that the findings made do not support the conclusions reached by the trial court.

Because of the inadequacy of the findings contained in the judgment denying appellant's request for alimony, that judgment must be vacated. We remand civil action No. 80CVD2312 to the district court for a redetermination of the issue of appellant's dependency and entry of a proper judgment containing findings of fact sufficiently specific to show that the court properly considered the guidelines and factors set forth in *Williams, supra.* Because we have determined that this judgment must be vacated, we need not address the remaining arguments made by appellant regarding it.

## II.  *Equitable Distribution*

Appellant contends that the court erred in several respects in distributing the parties' marital property and that therefore the judgment of equitable distribution must be vacated. The findings and conclusions in the judgment may be summarized as follows: the court found that the marital property acquired by the parties consisted of certificates of deposit and savings accounts having a total value of $68,000, certain real estate, furniture, a 1979 Oldsmobile automobile, a 1977 Ford truck, jewelry, and a grandfather clock, and that the total fair market value of this marital property as of the date of separation was $150,700. The court found that appellant had contributed $1500 of her separate property towards the acquisition of part of the real estate for which she was entitled to reimbursement and that therefore a total of $149,200 in marital property remained to be distributed. The judgment next contains numerous findings which demonstrate the court's consideration of evidence presented on the factors set forth in N.C. Gen. Stat. 50-20(c) (1984).

The court further found that prior to their separation the parties owned approximately $16,000 which was located in a safe in the marital residence; that the $16,000 disappeared from the safe; that both parties deny taking it or knowing what happened to it; that the trial court was unable to determine what happened to the money or whether either party has, or had at the time of separation, the money; but that each party is entitled to a one-half interest in the money wherever it might be. In addition, the court found that appellant surreptitiously took the $68,000 in savings accounts and certificates of deposit which were owned jointly by the parties on the date of their separation.

The court concluded that an equal division of the marital property was equitable, divided the tangible marital property between the parties, and ordered appellant to pay appellee a certain sum of money so as to equalize the distribution.

[2] Appellant first argues that the court erred in using the date of the parties' separation, instead of the date the absolute divorce action was filed, in identifying and valuing the marital property. Appellant's argument is premised on her assumption that the 1983 amendments to the Equitable Distribution Act, N.C. Gen. Stat. 50-20 and 50-21 (1984), do not apply to this case. This assumption, however, is incorrect.

The Equitable Distribution Act was enacted in 1981 and made applicable only when the action for an absolute divorce is filed on or after 1 October 1981. 1981 N.C. Sess. Laws, ch. 815. G.S. 50-20(b)(1) as originally enacted provided: " 'Marital property' means all real and personal property acquired by either spouse during the course of the marriage and presently owned, except property determined to be separate property in accordance with subdivision (2) of this section." In 1983, the General Assembly amended G.S. 50-20(b)(1) so that its first sentence now reads: " 'Marital property' means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property. . . ." 1983 N.C. Sess. Laws, ch. 640.

That same year, the General Assembly also amended G.S. 50-21 by adding a new subsection which reads in pertinent part: "(b) If the divorce is granted on the ground of one year separation, the marital property shall be valued as of the date of separation as determined under G.S. 50-6." 1983 N.C. Sess. Laws, ch. 671. The amendments in both Chapter 640 and Chapter 671 were made effective on 1 August 1983 and made applicable to actions pending in district court on that date and to actions filed thereafter. 1983 N.C. Sess. Laws, chs. 640 and 671.

The action between the parties here for absolute divorce and equitable distribution was pending in district court on 1 August 1983; therefore, the amendments in Chapters 640 and 671 are applicable. These amendments dictate that in the present case the date of the parties' separation be used in identifying and valuing

Talent v. Talent

the marital property. Thus, we conclude that the trial court ruled correctly on this question.

Appellant next argues that the court erred in including in its award the $16,000 missing from the parties' safe. She contends that the court's attempt to divide the non-existent funds was a vain act arising from sheer speculation. Although the court made the finding summarized previously herein with respect to the missing $16,000, it did not include the $16,000 in its listing of the marital property, nor apparently did it in any way consider the $16,000 in dividing the marital property. We conclude, therefore, that any error committed by the court in its treatment of the $16,000 was harmless.

[3] Appellant assigns as error the court's inclusion of the $68,000 in savings accounts and certificates of deposit in its award. She argues that the court should have made a finding regarding how much of the $68,000 remained in her possession at the time of the hearings on these issues and suggests that the full $68,000 was not marital property because it was not "presently owned" as required by G.S. 50-20(b)(1). We disagree. Since the $68,000 was acquired by the parties during their marriage and was owned by them on the date of their separation, under the circumstances of this case, the court correctly determined that the full $68,000 should be considered marital property as defined in G.S. 50-20(b)(1). The evidence shows that the $68,000 was an asset of the marriage which appellant took and used as her separate property before it was determined that she was entitled to it; thus, she should be required to account for it. This assignment of error is overruled.

Appellant argues the court erred in failing to attempt to trace the contribution made by her of her separate property towards the acquisition of part of the marital real estate. We disagree. Contrary to appellant's assertion, the court did attempt to trace the source of the funds used to purchase the real estate in question. The court found that appellant had contributed $1500 of her separate property towards the acquisition of the real estate and in effect reimbursed her for that contribution by dividing the marital property in such a way that she received a $1500 greater share of it. The court's finding is supported by the evidence and

appellant has not shown that the reimbursement or credit awarded her was inadequate or unfair in any respect.

[4] Appellant next contends that the court erred in finding that she has no obligations or indebtedness. In determining an equitable division of marital property, the court must consider the liabilities of each party at the time the property division is to become effective. G.S. 50-20(c)(1). Appellant argues that the finding made here regarding her liabilities is erroneous because the evidence shows that she had been repaying a loan through payroll deduction at the rate of approximately $274 a month. The evidence also shows, however, that appellant had completely repaid the loan prior to the time of the equitable distribution hearing; thus, the loan was not outstanding at the time the property division was to become effective. Accordingly, we reject this argument.

[5] Appellant asserts that error appears in the finding made concerning appellee's business. The court found that appellee purchased the business prior to the marriage, that it was his separate property, and that it has a current net worth of approximately $7,000. Appellant has not shown that this finding is inadequate or that it is not supported by the evidence. We conclude that appellant's argument must be overruled.

[6] We find merit, however, in other arguments made by appellant. Appellant contends, and we agree, that the court erred in treating certain jewelry given to appellant by appellee during the marriage as marital property. At the equitable distribution hearing, appellee admitted that the jewelry was appellant's separate property and clearly indicated that he did not contend that it was marital property. Despite this, the court classified and distributed the jewelry as marital property. This was error. Appellee's admission was binding on the court and required that the jewelry be treated as separate property. See Woods v. Smith, 297 N.C. 363, 255 S.E. 2d 174 (1979).

[7] We also agree that the court erred in finding that a mobile home and lot purchased by appellee after the date of the parties' separation was entirely separate property. The evidence shows that after the parties separated appellee used $10,000, which he had collected as repayment for a loan made during the marriage from marital funds, as a down payment on the mobile home and

lot. Clearly, the $10,000 collected by appellee should be considered marital property because it was a repayment of a loan of marital funds. The fact that this marital property was used to acquire other property after the date of the parties' separation did not cause it to lose its marital character. *See Mauser v. Mauser,* 75 N.C. App. 115, 330 S.E. 2d 63 (1985) (the characterization of property as separate or marital depends not on whether it was acquired after the date of separation but on whether the source of funds for its purchase was marital property or separate property). *See also Wilson v. Wilson,* 73 N.C. App. 96, 325 S.E. 2d 668 (1985), *disc. rev. denied,* 314 N.C. 121, 332 S.E. 2d 490 (1985). We conclude that the equity acquired in the mobile home and lot by appellee because of the $10,000 down payment of marital funds should be considered marital property and that the court erred in failing to recognize this. Additionally, we note that the court erroneously found that the amount of the down payment was $2,000 rather than $10,000 as shown by the evidence.

[8] Appellant argues the court further erred by failing to find that she owned as separate property the realty in Murraysville and the cemetery lots referred to previously herein. Again, we agree. In determining an equitable division of the marital property, the court must consider the separate property owned by each party at the time the property division is to become effective. *See* G.S. 50-20(c)(1); *Loeb v. Loeb,* 72 N.C. App. 205, 324 S.E. 2d 33, *cert. denied,* 313 N.C. 508, 329 S.E. 2d 393 (1985). The uncontradicted evidence shows that the above-mentioned property was acquired by appellant prior to the marriage and was therefore her separate property, *see* G.S. 50-20(b)(2), and that it was owned by her at the time the property division was to become effective. Thus, the court was required to consider it in determining an equitable division and should have made a finding indicating its consideration of the property.

We conclude that because of the errors committed by the court as just described, the judgment of equitable distribution must be vacated and the cause remanded for a redetermination of an equitable division of the marital property and entry of a new judgment not inconsistent with this opinion. Since the judgment of equitable distribution must be vacated, the judgment entered on 18 May 1984 in furtherance of the property division must also be vacated.

Lee v. Mowett Sales Co.

[9] We remind the trial court that the division of the marital property is to be accomplished by using the net value of the property, *i.e.*, its market value, if any, less the amount of any encumbrance serving to offset or reduce market value. *See* G.S. 50-20(c); *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984). Here, the court found the fair market value of the property and that there were no liens, mortgages, or other encumbrances on any of the property. Thus, the findings show that the net value of the property was the same as its fair market value. Accordingly, we find no error in the values used in this cause.

[10] We further instruct the court that on remand it should first determine an equitable distribution of the marital property and then determine whether appellant is entitled to alimony. When both permanent alimony and equitable distribution are requested as in this case, the equitable distribution should be decided first. *See Capps v. Capps*, 69 N.C. App. 755, 318 S.E. 2d 346 (1984); *see also McIntosh v. McIntosh*, 74 N.C. App. 554, 328 S.E. 2d 600 (1985). The court, in determining whether a party is entitled to alimony, must consider the estates of both parties. Until it is decided how the marital property is to be distributed, the parties' estates cannot definitely be determined.

Consistently with this opinion, the judgments appealed from are vacated and remanded.

Chief Judge HEDRICK and Judge WEBB concur.